Louis R. Strubeck, Jr.
Ryan E. Manns
**Norton Rose Fulbright US LLP**
2200 Ross Avenue
Suite 3600
Dallas, TX 75201-7932
Email:   louis.strubeck@nortonrosefulbright.com
         ryan.manns@nortonrosefulbright.com

Francis J. Lawall (admitted *pro hac vice*)
Donald J. Detweiler (admitted *pro hac vice*)
Joanna J. Cline (admitted *pro hac vice*)
**Pepper Hamilton LLP**
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19899-1709
E-mail:   lawallf@pepperlaw.com
          detweild@pepperlaw.com
          clinej@pepperlaw.com

*Counsel to the Official Committee of
Unsecured Creditors*

| | |
|---|---|
| In re:<br><br>4 WEST HOLDINGS, INC., *et al.*,<br><br>     Debtors. | Chapter 11<br><br>Case No. 18-30777-(HDH)<br><br>(Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of 4 WEST HOLDINGS, INC., *et al.*, Debtors in Possession<br><br>     Plaintiff,<br><br>     v.<br><br>OMEGA HEALTHCARE INVESTORS, INC., a Maryland corporation, *et al.*,<br><br>     Defendants.[1] | Adv. Pro. No. [__-_____-(HDH)] |

## ADVERSARY COMPLAINT

Plaintiff, the Official Committee of Unsecured Creditors (the "**Committee**") of 4

West Holdings, Inc. ("**4 West**") and its affiliated debtors and debtors in possession ("**Debtors**"

or the "**Company**"), on behalf of the Debtors, hereby brings this adversary proceeding against

---

[1] A list of the Debtors is attached hereto as **Exhibit A**.  A list of the Debtors that are parties to the Master Leases (as defined below) is attached as **Exhibit B**.  A list of the Defendants in this action is attached as **Exhibit C**.

Omega Healthcare Investors, Inc. ("**OHI**"), a publicly traded real estate investment trust

("**REIT**"), and affiliated entities that are nominal landlords under the Master Leases (as defined

below) (collectively "**Omega**," the "**Omega Parties**," or the "**Defendants**"), and alleges as

follows:

## NATURE OF ACTION

1.      Through this action, the Committee seeks declaratory relief finding that

the following Master Leases (defined below) are not leases of residential or non-residential real

property, but, rather, are disguised financing agreements:

        a.      South East Region - Master Lease, dated as of November 27, 2013, by and between certain Defendants and certain Company affiliates (as amended, the "**South East Master Lease**");

        b.      Indiana Region – Master Lease, dated as of November 27, 2013, by and between OHI Asset (IN) Connersville, LLC and Connersville RE, LLC (the "**Indiana Master Lease**");

        c.      North West Region – Master Lease, dated as of November 27, 2013, by and between certain Defendants and certain Company affiliates (the "**North West Master Lease**"); and

        d.      Texas Region – Master Lease, dated as of November 27, 2013, by and between certain Defendants and certain Company affiliates (the "**Texas Master Lease**," and together with the South East Master Lease, Indiana Master Lease, and North West Master Lease, the "**Master Leases**").[2]

2.      4 West entered into the Master Leases as part of a sale/leaseback

transaction orchestrated by Omega and the Schwartzberg Family, pursuant to which the

Schwartzberg Family Trusts acquired the stock of Ark Holding Company, Inc. ("**Ark**" or

"**Covenant Dove**"), s/k/a Orianna Investment, Inc. (the "**Omega Transaction**"). The Omega

Transaction was effectuated pursuant to: an Agreement and Plan of Merger, dated September 13,

---

[2] The relief requested is without prejudice as to all objections, claims, causes of action, defenses, offsets, setoff, or recoupment the Debtors and the Debtors' estates may have or hold as to the nature, extent, validity or priority of any secured claims or liens Omega may assert as a result of the financing agreements or Master Leases.

2013 (the "**Merger Agreement**"); a Sale Leaseback Agreement, dated as of September 13, 2013 (the "**Sale Leaseback Agreement**"); and the Master Leases.  True and accurate copies of the Merger Agreement (**Exhibit D**), Sale Leaseback Agreement (**Exhibit E**), South East Master Lease (**Exhibit F**), Indiana Master Lease (**Exhibit G**), North West Master Lease (**Exhibit H**), and Texas Master Lease (**Exhibit I**) are attached hereto.

3.      Although the Omega Transaction is labeled as a sale/leaseback, the parties intended that the transaction be a financing.  Indeed, as alleged in more detail below, the economic realities and terms of the Omega Transaction, along with Omega's own characterization of the transaction, prove that it is a financing arrangement.

4.      The Committee therefore seeks a declaration that the Master Leases that effectuated the Omega Transaction is actually a financing agreement, not a "lease" under section 365 of the Bankruptcy Code, such that the Omega Defendants are creditors, not lessors.

## JURISDICTION AND VENUE

5.      This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This action is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES AND RELEVANT NON-PARTIES

### DEBTOR ENTITIES AND AFFILIATES

7.      4 West is a Delaware corporation, with its principal place of business in Nashville, Tennessee. 4 West does business as "Orianna Health Systems, Inc" and is in the business of operating 41 skilled nursing facilities ("**SNFs**") and managing one SNF in the seven states of Georgia, Indiana, Mississippi, North Carolina, South Carolina, Tennessee and Virginia.

8.      4 West is wholly owned by 4 West Investors, LLC. 4 West Investors, LLC, in turn, is owned in its entirety by three Schwartzberg family trusts—HS New Ark Trust, JS New Ark Trust, and DES New Ark Trust (the "**Schwartzberg Family Trusts**").

9.      4 West wholly owns several subsidiary holding companies ("**4 West HoldCos**").  Those holding companies, in turn, collectively own over 100 operating and property companies ("**4 West OpCos**" and "**4 West PropCos**," respectively).  Generally speaking, there is one 4 West OpCo and one 4 West PropCo for each SNF operated by Debtors.

10.     The 4 West OpCos hold licenses and other assets necessary to operate each SNF, and are certified to participate in Medicare and Medicaid programs.

11.     The 4 West PropCos are nominally "tenants" who pay "rent" to Omega subsidiaries with respect to the real property on which each respective facility is housed.

## THE COMMITTEE

12.     On March 19, 2018, the Committee was appointed by the Office of the United States Trustee (the "**U.S. Trustee**") to represent the interests of unsecured creditor in the Debtors' bankruptcy cases.  The U.S. Trustee appointed Pharmerica Corporation, Healthcare Service Group, Medline Industries, Alana Healthcare, Omnicare, Inc., Joerns Healthcare LLC and Regional Ambulance as members of the Committee.

13.     On May 29, 2018, the Committee filed a motion for standing to bring this action [Docket No. 469], and standing was granted, in part, and continued, in part, by order of this Court on August 7, 2018 [Docket No. 806].

## THE OMEGA DEFENDANTS

14.     Defendant OHI is a Maryland corporation and is a publicly traded REIT that invests in SNFs.

#49713143 v4

15. Defendant OHI Asset RO, LLC is a Delaware limited liability company and affiliate of OHI.

16. The following Defendants are all affiliates of OHI and are or were nominal landlords under the South East Master Lease:

    a.    OHI Asset (MS) Cleveland, LLC, a Delaware limited liability company;

    b.    OHI Asset (MS) Clinton, LLC, a Delaware limited liability company;

    c.    OHI Asset (MS) Columbia, LLC, a Delaware limited liability company;

    d.    OHI Asset (MS) Corinth, LLC, a Delaware limited liability company;

    e.    OHI Asset (MS) Byhalia, LLC, a Delaware limited liability company;

    f.    OHI Asset (MS) Greenwood, LLC, a Delaware limited liability company;

    g.    OHI Asset (MS) Grenada, LLC, a Delaware limited liability company;

    h.    OHI Asset (MS) Holly Springs, LLC, a Delaware limited liability company;

    i.    OHI Asset (MS) Indianola, LLC, a Delaware limited liability company;

    j.    OHI Asset (MS) Natchez, LLC, a Delaware limited liability company;

    k.    OHI Asset (MS) Picayune, LLC, a Delaware limited liability company;

    l.    OHI Asset (MS) Vicksburg, LLC, a Delaware limited liability company;

    m.    OHI Asset (MS) Yazoo City, LLC, a Delaware limited liability company;

n.      OHI Asset (SC) Edgefield, LLC, a Delaware limited liability company;

o.      OHI Asset (VA) Charlottesville, LLC, a Delaware limited liability company;

p.      OHI Asset (VA) Farmville, LLC, a Delaware limited liability company;

q.      OHI Asset (VA) Hillsville, LLC, a Delaware limited liability company;

r.      OHI Asset (VA) Rocky Mount, LLC, a Delaware limited liability company;

s.      OHI Asset (SC) Pickens East Cedar, LLC, a Delaware limited liability company;

t.      OHI Asset (SC) Greenville North, LLC, a Delaware limited liability company;

u.      OHI Asset (SC) Simpsonville SE Main, LLC, a Delaware limited liability company;

v.      OHI Asset (SC) Easley Crestview, LLC, a Delaware limited liability company;

w.      OHI Asset (SC) Easley Anne, LLC, a Delaware limited liability company;

x.      OHI Asset (SC) Piedmont, LLC, a Delaware limited liability company;

y.      OHI Asset (SC) Greenville Laurens, LLC, a Delaware limited liability company;

z.      OHI Asset (SC) Anderson, LLC, a Delaware limited liability company;

aa.      OHI Asset (SC) Simpsonville West Curtis, LLC, a Delaware limited liability company;

bb.      OHI Asset (SC) Simpsonville West Broad, LLC, a Delaware limited liability company;

cc.      OHI Asset (SC) Pickens Rosemond, LLC, a Delaware limited liability company;

dd.      OHI Asset (SC) Aiken, LLC, a Delaware limited liability company;

ee.      OHI Asset (SC) Greer, LLC, a Delaware limited liability company;

ff.      OHI Asset (SC) Marietta, LLC, a Delaware limited liability company;

gg.      OHI Asset (SC) McCormick, LLC, a Delaware limited liability company;

hh.      OHI Asset (TN) Bartlett, LLC, a Delaware limited liability company;

ii.      OHI Asset (TN) Collierville, LLC, a Delaware limited liability company;

jj.      OHI Asset (GA) Snellville, LLC, a Delaware limited liability company;

kk.      OHI Asset (GA) Moultrie, LLC, a Delaware limited liability company;

ll.      OHI Asset (NC) Wadesboro, LP (f/k/a OHI Asset (NC) Wadesboro, LLC), a Delaware limited partnership;

mm.      OHI Asset (TN) Memphis, LLC, a Delaware limited liability company;

nn.      OHI Asset (SC) Greenville Griffith, LLC, a Delaware limited liability company.

17.      The following Defendants are all affiliates of OHI and are nominal landlords under the Indiana Master Lease:

a.      OHI Asset (IN) Connersville, LLC, a Delaware limited liability company.

18.      The following Defendants are all affiliates of OHI and are or were nominal landlords under the North West Master Lease:

a.      OHI Asset (ID) Holly, LLC, a Delaware limited liability company;

b.      OHI Asset (ID) Midland, LLC, a Delaware limited liability company;

-7-

      c.        OHI Asset (OR) Portland, LLC, a Delaware limited liability company;

      d.        OHI Asset (UT) Provo, LLC, a Delaware limited liability company;

      e.        OHI Asset (UT) Roy, LLC, a Delaware limited liability company;

      f.        OHI Asset (UT) Ogden, LLC, a Delaware limited liability company;

      g.        OHI Asset (WA) Battle Ground, LLC, a Delaware limited liability company.

19.      The following Defendants are all affiliates of OHI and are or were nominal landlords under the Texas Master Lease:

      a.        OHI Asset (TX) Anderson, LLC, a Delaware limited liability company;

      b.        OHI Asset (TX) Bryan, LLC, a Delaware limited liability company;

      c.        OHI Asset (TX) Burleson, LLC, a Delaware limited liability company;

      d.        OHI Asset (TX) Comfort, LLC, a Delaware limited liability company;

      e.        OHI Asset (TX) Diboll, LLC, a Delaware limited liability company;

      f.        OHI Asset (TX) Granbury, LLC, a Delaware limited liability company;

      g.        OHI Asset (TX) Italy, LLC, a Delaware limited liability company;

      h.        OHI Asset (TX) College Station, LLC, a Delaware limited liability company;

      i.        OHI Asset (TX) Winnsboro, LLC, a Delaware limited liability company.

## FACTUAL ALLEGATIONS

### 1. The Origins Of 4 West

20. Ark, also known as Covenant Dove, was acquired in July 2007 by Behrman Capital PEP L.P. It provided long-term care and rehabilitation services in SNFs primarily in the Southeast region of the United States.

21. Under the Covenant Dove umbrella were a number of holding companies, which indirectly held, with respect to each SNF facility, an operating company and a property company.

22. The Covenant Dove operating companies each owned various licenses and other assets necessary to operate each SNF.

23. The Covenant Dove property companies each owned title to the real property on which each respective facility was housed.

### 2. 2013 Merger and Sale Leaseback Transactions

24. In July 2013, OHI submitted an expression of interest pursuant to which an Omega subsidiary would purchase the stock of Ark, with the intention of █████████ ██████████████████████████████████████████████████████████████. A copy of the July 2, 2013 Term Sheet submitted by Omega to Ark/Covenant Dove is attached hereto as **Exhibit J**.

25. Although that proposed stock purchase did not come to fruition, Omega ultimately negotiated a deal pursuant to which it would finance the purchase of Ark's stock by entities owned by the Schwartzberg Family Trusts, which would in turn operate the SNF facilities.

-9-

26.    Through a series of entities and transactions further described below, 4 West (wholly owned by the three Schwartzberg Family Trusts) borrowed over $525 million from Omega to acquire the stock of Ark.

27.    More specifically, on September 13, 2013, 4 West and Omega entered into the following transactions executed simultaneously: (a) the Merger Agreement; (b) the Sale Leaseback Agreement; and (c) the Master Leases.  Pursuant to those agreements, Omega loaned to the Company roughly $525 million.  The proceeds of the Omega Transaction were used to pay, among other things, the indebtedness of the surviving corporation, Ark, and the merger consideration to the Ark's stockholder.  Omega purportedly acquired Ark's stock specifically for the sole purpose of leasing such properties to the Debtors to operate as SNFs.  Further, as a result of the Merger, Ark became wholly owned by 4 West and later changed its name to Orianna Investment, Inc.

28.    The Master Leases that were entered into as part of the Omega Transaction were divided by region: South East, North West, Indiana and Texas.

29.    Pursuant to these Master Leases, the 4 West PropCos became nominal tenants who paid "rent" to Omega as a means of effectively repaying the $528,675,000 purchase price for Covenant Dove.  In addition, the 4 West PropCos purported to grant Omega a security interest in their assets (as described more fully below).  The 4 West PropCos entered into subleases with the 4 West OpCos, now also owned by 4 West.

30.    As required by the financing transaction, the 4 West OpCos also entered into Guaranties of Obligations and Operator Security Agreements, pursuant to which they pledged to Omega, to secure, among other things, all of the "Obligor Group Obligations" (as defined in the Master Leases), all tangible and intangible personal property, Government

#49713143 v4

Contracts and Government Accounts (to the extent not prohibited), and all additions, accessions, replacements, products and proceeds.

31.    The Merger Agreement, Sale Leaseback Agreement, and Master Leases nominally closed and went effective on November 27, 2013.

32.    In its 2014 Form 10-K (**Exhibit K**), Omega described the transaction as follows:

> On November 27, 2013, we closed on an aggregate $529 million purchase/leaseback transaction in connection with the acquisition of Ark Holding Company, Inc. ("Ark Holding") by 4 West Holdings Inc. At closing, we acquired 55 SNFs and 1 ALF operated by Ark Holding and leased the facilities back to Ark Holding, now known as New Ark Investment Inc. ("New Ark"), pursuant to four 50-year master leases, with rental payments yielding 10.6% per annum over the term of the leases. The purchase/leaseback transaction is being accounted for as a direct financing lease.
>
> The lease agreements allow the tenant the right to purchase the facilities for a bargain purchase price plus closing costs at the end of term.  In addition, commencing in the 41st year of each lease, the tenant will have the right to prepay the remainder of its obligations thereunder for an amount equal to the sum of the unamortized portion of the original aggregate $529 million investment plus the net present value of the remaining payments under the lease, and closing costs.  In the event the tenant exercises either of these options, we have the right to purchase the properties for fair market value at the time.
>
> The 56 facilities represent 5,623 licensed beds located in 12 states, predominantly in the southeastern United States. The 56 facilities are separated by region and divided amongst four cross-defaulted master leases.  The four regions include the Southeast (39 facilities), the Northwest (7 facilities), Texas (9 facilities) and Indiana (1 facility).

**3.    Terms of the Master Leases**

33.    All four Master Leases contained similar or identical terms, but were related to different facilities with different landlords, tenants, subtenants, and amount of "rent"

due. These provisions confirm that the parties in fact intended for the transaction to be a financing arrangement, not a lease.

34. The economic value of each of the Master Leases is exhausted at the end of each Master Lease. Each Master Lease is a long term lease (50 years), and at the time the Master Leases were entered into, Omega believed ███████████████████ ███████. *See* **Exhibit L**.

35. The "rent" payments were calculated based upon the amount 4 West borrowed from Omega, not the fair market value of the facilities. Indeed, "rent" payments for the life of each Master Lease are shown on a schedule titled "Amortization of Funded Amount," which also lists Omega's gross investment, carrying amount of the leased property, unearned profit (also designated as interest), and the total amount of principal paid per month. The amortization schedule used as a basis for the deal showed that the actual "rent" could not fully satisfy the obligations at the outset of the transaction thus causing "negative amortization." At the beginning of the fourth Lease Year (as defined in the Master Leases), which began on January 1, 2017, Base Rent (as defined in the Master Leases) increased by 7.66% under the North West, Indiana and Texas Master Leases. For each succeeding Lease Year after the fourth Lease Year, the Base Rent was to increase by 2.5% under all four Master Leases. Pursuant to the Sale Leaseback Agreement, the purchase price for the facilities was explicitly tied to the $525 million base amount of consideration under the Merger Agreement, not to the appraised value of the facilities. The base amount of the purchase price under the Sale Leaseback Agreement and the base amount of the merger consideration under the Merger Agreement were both $525 million, and the definition of "Purchase Price" set forth in the Sale Leaseback Agreement includes terms which themselves are defined in the Merger Agreement.

36. The payments required to be made to Omega under the Master Leases were computed to provide it with a particular return on its $525 million loan. The amortization schedule attached to each Master Lease provides that there is a 10.58% to 11.16% implicit rate over the term of leases, while the Omega Healthcare Investors, Inc. Form 10-K for the fiscal year ending December 31, 2016 (the "**2016 Omega 10- K**") says the Master Leases yield a 10.6% per annum over term of leases. *See* **Exhibit M**.

37. Omega purchased the facilities with the specific intent to lease them back to the Debtors.

38. Upon information and belief, the Sale Leaseback Agreement and the Master Leases were structured as they were for certain tax reasons, including Omega's status as a REIT. The Master Leases provide that "Sale Leaseback Agreement together with this lease shall be treated by the Parties for (i) all federal, state and local income tax purposes as a financing arrangement, and (ii) GAAP accounting purposes as a capital lease." *See* Master Leases, Art. 23.1. Moreover, the Master Leases also provide that for tax purposes (i) the amounts paid by the Omega landlords for the acquisition of the SNFs will be treated as a loan to the 4 West PropCos; (ii) the Omega landlords and 4 West PropCos will classify and characterize all "rent" payments as payments of principal and interest; (iii) the 4 West PropCos shall continue to claim depreciation for the SNFs. *See id.* The characterization of the 4 West PropCos' payments under the Master Leases as "interest" suggests that each Master Lease is a financing and not a true lease. Discussing the Master Leases in the 2016 Omega 10-K, Omega represents that there is a risk that the Omega landlords could be found by the Internal Revenue Service *not* to be the true owner of the SNFs allegedly acquired through the Merger and leased to the Company through the Sale Leaseback Agreement:

> The availability to us of, among other things, depreciation deductions with respect to our owned facilities (which reduce our taxable income and the amount of our required dividend distributions) depends upon the determination that, for federal income tax purposes, we are the true owner of such facilities for federal income tax purposes, which is dependent on the classification of the leases to operators or our facilities as "true leases" rather than financing arrangements for federal income tax purposes. . . . However, no assurances can be given that the IRS will not successfully challenge our status as the owner of our facilities subject to leases, and the status of such leases as true leases, asserting that the purchase of the facilities by us and the leasing of such facilities merely constitute steps in secured financing transactions in which the lessees are owners of the facilities and we are merely a secured creditor.

2016 Omega 10-K, at 11.

39.     The 4 West PropCos assume many of the obligations normally associated with ownership.  For instance, the Master Leases provide that the 4 West PropCos are responsible for all utilities, insurance, tax and maintenance payments.  *See* Master Leases, Art. 3.1, 3.4, 4.1, 7.1, 7.2.  Further, if a SNF governed by a Master Lease is destroyed by casualty or partial taking through eminent domain (or in response to a threat of eminent domain), the Tenant, *i.e.*, the applicable 4 West PropCo, bears the entire risk of loss as it has to make all repairs at its own expense, including in a partial taking situation to restore the property such that it can be used for substantially the same purpose pre-taking.  *See* Master Leases, Art. 9.1, 9.4, 10.2.  The only contribution by the Omega landlords with respect to such repairs is that it will either provide to the 4 West PropCo (i) the net received insurance proceeds after certain conditions are satisfied, or (ii) the lesser of the net award from the taking or the 4 West PropCo's out-of-pocket costs of restoring the SNFs.  *See* Master Leases, Art. 9.4, 10.2.

40.     Similarly, in each of the Master Leases, the risk of loss is on the 4 West PropCo Debtors in the event of a casualty or condemnation.  After condemnation or destruction of an SNF property by casualty or taking, the Master Leases do not permit the 4 West PropCos to

-14-

abate any amount of rent, even though they will not be receiving full, or potentially, any beneficial use of the property pending the completion of the repairs or rebuilding. *See* Master Leases, Art. 9.9, 9.10, 10.4.

41. If a casualty or complete taking destroys or takes the entire SNF property, or the damage/extent of the taking results in the 4 West PropCo not being able to use the SNF for the purposes it was used for, for 120 days following the casualty event or taking, the Master Leases require the 4 West PropCos to submit, within 30 days after the casualty event or taking, an irrevocable, rejectable written offer (the "**Rejectable Offer**") to buy the Omega landlord's interest in the SNF. *See* Master Leases, Art. 9.10, 10.4.

42. The purchase price in the Rejectable Offer must be equal to the "Facility Transfer Price" (also defined in the Master Leases as the "Offer Price") as of a specified proposed purchase date, respectively. *See* Master Leases, Art. 9.10, 10.4. The "Facility Transfer Price" is approximately the current month's rent, plus the net present value of the remaining Base Rent for the applicable SNF being sold, plus the Omega landlord's costs and expenses of the transfer. *See* Master Leases, Art. 1.4. After receipt of the Rejectable Offer, the Omega landlord has 30 days to decide whether to accept or reject the Rejectable Offer. *See* Master Leases, Art. 9.10, 10.4. If the Rejectable Offer is rejected by the Omega landlord, then the 4 West PropCo still has to repair the SNF at its sole expense. *See id.*

43. This risk of loss, and obligation to pay rent when not receiving any beneficial use of property, is further demonstrated by the Master Leases explicitly not permitting the 4 West PropCos to terminate the Master Leases, or seek to abate, reduce, setoff or recoup against the rent owed under the Master Leases, without the Omega landlord's consent. *See* Master Leases, Art. 2.6.

-15-

44.     The applicable 4 West PropCos have the option to purchase the facilities back from Omega for a nominal amount at the end of the lease term.  Under the Master Leases, the 4 West PropCos have the option (the "**Tenant Option**") to purchase the SNF properties for a nominal $10.00 during the last month of the lease term or, if the Tenant Option is exercised after the first 40 years of the lease term but before the last month, for the amount of the current month's rent, plus the net present value of the remaining Base Rent, plus the Omega landlord's costs and expenses of closing the Tenant Option.  *See* Master Leases, Art. 1.4, 12.1, 12.3, 12.4. If the 4 West PropCos want to exercise the Tenant Option, the Master Leases require them to exercise the Tenant Option for all SNF properties and for all four Master Leases.  *See* Master Leases, Art. 12.1.

45.     After the exercise of the Tenant Option, but prior to its closing, the Omega landlords have the ability to elect to buy out the Tenant Option by paying the 4 West PropCos the fair market value of the Tenant Option Property (as defined in the Master Leases).  *See* Master Leases, Art. 12.10.

46.     Pursuant to the Master Leases, the 4 West PropCos granted the Omega landlords a security interest in the following property, whether then owned or subsequently acquired, to secure the payment and performance of the Obligor Group Obligations (as defined in the Master Leases):

a.     All machinery, furniture, equipment, trade fixtures, appliances, inventory and all other goods as defined in Article 9 of the Uniform Commercial Code, and any leasehold interest of the 4 West PropCos therein;

b.     All accounts, contract rights, general intangibles, instruments, documents, and chattel paper;

c.     All franchise, permits, licenses, operating rights, certifications, approvals, consents, authorizations and other general intangibles, including certificates of need, state health care facility licenses,

and Medicare and Medicaid provider agreements, to the extent permitted by law;

d.    Unless expressly prohibited by the terms thereof, all contracts, agreements, contract rights and materials relating to the design, construction, operation or management of any improvements, including, but not limited to, plans, specifications, drawings, blueprints, models, mock-ups, brochures, flyers, advertising and promotional materials and mailing list;

e.    All subleases, occupancy agreements, license agreements and concession agreements, written or unwritten, of any nature, and all right title and interest of the 4 West PropCo thereunder, including, without limitation, the 4 West PropCo's right to cash or securities deposited thereunder;

f.    All ledger sheets, files, records, computer programs, tapes, other electronic data processing materials, and other documentation; and

g.    The products and proceeds of the preceding listed property, including, without limitation, cash and non-cash proceeds, proceeds of proceeds, and insurance proceeds.

*See* Master Leases, Art. 24.1.

47.    These Master Leases were not leases at all, but actually financing agreements.

**4.**    **Tax Treatment of the Master Leases Confirm They Are a Financing Arrangement**

48.    Based on the guidance of outside tax counsel, 4 West filed a Net Gain Form 4797 with the IRS in connection with its 2013 tax returns, characterizing the Omega Transaction as a financing arrangement.

49.    In related correspondence, the IRS ███████████████████ ███████████████████████████████████████, and ██████████ ████████████████████████████████████████████████████ ██████████. *See* **Exhibit N.**

#49713143 v4

50. In responding to the IRS inquiry, Defendant and the Company jointly submitted the following information, confirming the Omega Transaction is a financing arrangement:

*Does Omega Healthcare retain significant control over the leased property?*



*Did Omega Healthcare acquire an equity interest in the property?*



*Is Omega Healthcare vested with the right of possession?*



*Which party pays property taxes after the transaction?*



*Which party bears the risk of economic loss or physical damage to the property?*





*See id.*

5. **Omega Statements Confirming That It Intended For Master Leases To Be Treated As A Financing Arrangement**

51. Omega's principals have made several statements indicating that Omega did not believe that they owned the properties but rather was financing them for the Company as owners.

52. On August 14, 2013, Taylor Pickett, Chief Executive Officer of OHI stated in an e-mail to Harris Schwartzberg that █████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ *See* **Exhibit O**.

53. On September 13, 2013, Eliot Robinson, an attorney for Omega, stated in an e-mail to Taylor Pickett and others relating to the proposed sale-leaseback transaction ████████████████████████████ *See* **Exhibit P**.

54. On September 30, 2015, Vikas Gupta, on behalf of Omega, stated in an email to Raymond Mulry that he ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████ *See* **Exhibit Q**.

**COUNT I**
**DECLARATORY JUDGMENT OF PROPER**
**CHARACTERIZATION OF THE MASTER LEASES**
**(28 U.S.C. § 2201)**

55.     Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

56.     This claim for relief arises under the Federal Declaratory Judgement Act, 28 U.S.C. §2201, or other applicable law.

57.     Defendants contend that the Master Leases are within the meaning of section 365 of the Bankruptcy Code, under which Master Leases Defendants are lessors and certain of the Debtors are lessees.  Thus, an actual, substantial, and justiciable controversy exists between the Committee and Omega concerning whether the Master Leases are actually financing agreements.

58.     None of the Master Leases are "leases" within the meaning of Bankruptcy Code section 365.  Instead, based on their characteristics as set forth in detail above, the Master Leases are actually financing agreements.

59.     The economic realities of the Omega Transaction and the terms of the agreements prove that the relationship between the Defendant and the Company is a borrower/lender relationship and not a lessee/lessor relationship.  The parties intended the Master Leases to be financing arrangements and not leases.

60.     Omega "purchased" the assets subject to the Master Leases specifically for the purpose of "leasing" them back to 4 West to operate as skilled nursing facilities.

61.     The tax treatment of the Master Leases confirms that such transactions were financing arrangements and not leases.

#49713143 v4

62. The terms of the Masters Leases confirm that they are financing arrangements and not leases: (i) the payments under the Master Leases were interest payments and were computed to provide Omega with a return on its investment; (ii) the "rent" was calculated based on the amount 4 West borrowed and not the fair market rental value of the facilities; (iii) the facilities were purchased specifically for 4 West to operate; (iv) the Master Leases were structured as direct financing leases to secure certain tax advantages; (v) the 4 West PropCos assume many of the obligations normally associated with outright ownership; (vi) the 4 West PropCos bear the risk of loss; (vii) the economic value of the facilities is exhausted at the end of the Master Leases; and (viii) the 4 West PropCos have the option to purchase for a nominal amount at the end of the Master Leases.

63. All of these facts and provisions demonstrate that each of the Master Leases is a financing and not a lease.

64. Therefore, Plaintiff seeks a declaratory judgment that the Master Leases are actually financing agreements, not "leases" as that term is used in section 365 of the Bankruptcy Code, and that Defendants are creditors of the Company, not its lessors.

WHEREFORE, Plaintiff respectfully requests judgment for the Company and against the Defendants, and for the Court to enter an order as follows:

A. Declaring that the Master Leases are financing agreements, not "leases" under section 365 of the Bankruptcy Code, such that the Defendants are creditors, not the Company's lessors; and

B. Granting any further relief the Court deems just and proper.

*(Signature Page Follows)*

-21-

DATED:  August 13, 2018                          Respectfully submitted,
Dallas, Texas

                                                 /s/      *Ryan E. Manns*
                                                 Louis R. Strubeck, Jr.
                                                 Ryan E. Manns
                                                 **Norton Rose Fulbright US LLP**
                                                 2200 Ross Avenue, Suite 3600
                                                 Dallas, TX 75201
                                                 Telephone:  214-855-8000
                                                 E-mail: louis.strubeck@nortonrosefulbright.com
                                                         ryan.manns@nortonrosefulbright.com
                                                         -and-
                                                 Donald J. Detweiler
                                                 Francis J. Lawall
                                                 Joanna J. Cline
                                                 **Pepper Hamilton LLP**
                                                 Hercules Plaza, Suite 5100
                                                 1313 N. Market Street
                                                 Wilmington, DE 19899-1709
                                                 Telephone:  302-777-6500
                                                 E-mail: detweild@pepperlaw.com
                                                         lawallf@pepperlaw.com
                                                         clinej@pepperlaw.com

                                                 *Counsel for the Official*
                                                 *Committee of Unsecured Creditors*